Chief Justice Robertson
delivered the Opinion of the Court.
On the 9th of October, 1782, John May and William Kennedy entered into a covenant, whereby Kennedy undertook to locate, on as good land as was vacant in Fayette county, Kentucky, two land warrants (for 42,532 acres of land in the aggregate) which had been issued to John Tabb, and which May delivered to him (Kennedy,) and May covenanted that Kennedy should be entitled, for his services, to '■'■one sixth part of all the land obtained thereupon, clear of all expenses.” It does not appear certainly how May had acquired an interest in the warrants; nor does the extent of his interest appear, except from a memorandum made .by himself on the 15th of August, 1785, in which he stated, among other things, that Tabb’s two warrants for 42,532 acres had been located for the benefit of himself and Tabb, and William May, George May and William Kennedy, and that the said parties were entitled to the following interests therein — towit— Tabb three sixth parts — William Kennedy one sixth part — William May one sixth part — and George May and himself (John May) one sixth part, or one twelfth part each.
The warrants having been entered in five separate parcels in 1784, grants were issued to Tabb and John May for 41,846 acres in the following manner: one grant was issued on the 15th of November, 1786, *307 for 18,000 acres to Tabb anti John May three other grants were issued on the 14th of November, 1786, two of them to Tabb and J. May jointly — (the third is not filed) — and another grant was issued to Tabb alone for 1,278 acres.
John May died in the year 1790, leaving a widow and two infant children in Virginia. On the 15th of August, 1785, William May sold his interest to Matthew Walton, who afterwards sold it to Lewis Craig. On the 27th of March, 1792, Tabb and George May sold their interests to Philemon Thomas. On the 5th of June, 1787, John May and William Kennedy agreed to make'an exchange of a portion of May’s interest in the survey of 18,000 acres, for Kennedy’s interest in 4,532 acres of other locations of Tabb’s warrants.
On the 28th of June, 1792, the legislature of this state, at the instance of Craig and Thomas, passed an act for making partition between them and John May’s heirs, of the 41,846 acres of land, by assigning to them three fourths, and to May’s heirs one fourth.
The partition of the 18,000 acre tract, seems to have been made in the fall 1792, but was not reported until September, 1794, (no partition seems to have been ever made, of any of the other tracts.) The partition thus made assigned to John May’s heirs 3,000 acres in one place, and 500 acres in another place, and the residue of the tract to Thomas and Craig, after platting out a considerable portion which was covered by prior claims deemed superi- or to that of Tabb- and Cm
Lewis Craig bought Kennedy’s interest in the contract with John- May for exchange of lands, and also his original interest in the 18,000 acres. The article of agreement, reciting this contract, is dated December 6, 1792, and, among other things, excepts from the sale, Kennedy’s interest in a salt spring, and “2,000 acres of land laid off by commissioners appointed by the General Assembly of the state .of Kentucky, to include the said salt spring,” and stipulates that, if Tabb’s entry should be ascertained to be superior to that of Williams, *308 which interfered with it, Craig should convey to Machir 250 acres, in compliance with a covenant previously made by Kennedy to Machir, and also that “if any part of said Tabb’s entry, which has been divided by said commissioners, and which is now sold by said Kennedy, shall hereafter be taken by a better claim or claims, then the said Kennedy agrees to refund to said Craig £30 for every 100 acres so lost, and so in proportion for any lesser quantity. ” Craig also purchased from Walton, William May’s interest in the whole 41,846 acres; the written transfer by Walton is dated in 1795; but the appellees allege that the contract was, in fact, made prior to the passage of the act for partition.
Thomas afterwards released to Craig, who lived on the 18,000 acre tract, and-who, having, as he supposed, purchased lroni John May’s executrix, all his interest in that tract, sold and conveyed to various persons the 3,000 acres which had been "assigned to May’s heirs, and which lie in Mason and Bracken counties: after these purchasers had lived several years, on the lands respectively bought by them, May’s heirs obtained judgments in ejectment against them, to enjoin which a suit in chancery was brought by Frazee and others, in the Mason circuit court, and another suit in chancery was instituted by Fenton and others in the Bra< ken circuit court. The suit in Mason (removed to Nicholas) was heard first, and came to this court, where the decree of the circuit court, for perpetuating the injunction to the judgment in Mason, was reversed; a reference to the opinion of this court in that case, IV. Littell’s Reports, 391, will render a recapitulation of all the facts, common to both cases, unnecessary. Alter that opinion was deliveied, the complainants in this case, amended their bill, and averred that Craig bought Wm. May’s interest prior to the act of 1792; that lie did not buy Kennedy’s interest in the 18,0U0 acres, until alter the passage ot that act; and that, in the assignment by the i ommissioners to May’s heirs, Kennedy’s interest as locator, was included, so as to make one iourth oí the tract. The answer requires prooí, &c. insists on the conclusiveness of the opinion ol this court in the other case, and avers *309 that the parties in this case had agreed to submit to the decision of that, before the opinion referred to had been rendered. Tlie circuit court decreed relief to the complainants, and the deiendauts have appealed to this court.
Agreement to permit one suit t.i abide ¡he deci-ron of another, if established, would be effectuated by the court. The opinion of the emit, deduced Irom facts in one case, cannot control iri other, though the subject matter be the same and the facts chiefly the same, when the facts are not precisely the same, and (he case is not between the same parties or privies.
Where party seeking relief has been always in possession of land under contract, lapse of time is no bar, but rather operates advantageously.
If the parties agreed that the decision in the case of May,s heirs vs. Frazee et al. should control this case, it would certainly be unjust for the appellees to evade that agreement. It is not improbable that some such understanding existed, because this case seems to have been neglected and permitted to remain stationary from the date of the alleged agreement, until after the opinion of this court in the other case had been rendered. But there is neither any direct parol evidence of any such contract, nor any record or written memorial of it. Therefore, however the fact may happen to be, this court cannot give any effect to the agreement insisted on in the answer to the supplemental bill. Nor can the opinion in the case of Fruzeeetal. be admitted to be decisive of the merits of this case, merely on the ground that the same subject matter is involved in both, and that the facts in each case are chiefly the same; because the parties are not the same; the facts are not precisely the same, and that opinion, so far as it is a deduction from facts, cannot be authoritative in any other case, as to persons who were neither parties nor privies in that case.
Nor can the lapse of time prejudice the equity of the appellees. They have satisfactorily proved that, many years ago, they acquired, as bona fide purchasers, all Craig’s interest, (to the extent of their claims,) in the 3,000 acres of land assigned by the commissioners to May’s heirs, and that they have resided on the lands, purchased by them from Craig, ever since the date of their contracts, and there is sulficient reason to infer that they never apprehended that there was any defect in their titles, or that May’s heirs had any claim or would ever prefer any, until the ejectment was sued out. against them. Under such circumstances time is rather favorable than otherwise to their claim to relief.
Bill to enforce specific execution of contract for exchange of land; complainant must show "hat the contract can be fairly and availably executed on his part.
Contract to exchange with C* for so much land as may be ob-for'bis inter™ est as locator after the emaeation of the patents notachancing bargain; Boris the fact oí tlle land ,!oVthat ¡t has been obtatned; the Part' claim-inS execution 0f the contract must ®how the title '
*310 The circuit court, recognising and ratifying the-i)arUuoil Uie commissioners, and supposing that interest was included in the part allotted to May’s heirs, decreed Unit the contract for exchange, between Kennedy and John May, should be emorced, and that the injunction should be perpetuated to the extent ol tne quantity of land to winch the appellees were ueeuied to be entitled under that contract, and lor two thirds, (Kennedy’s interest as locator,) ot so much oi the 3,1)00 acres as lie in-Bracken, and was not concluded by the opinion of tins court in the case from Mason.
For the reasons assigned in the case of May’s heirs vs. Fiazee et al. and for other reasons which it would be useless now to add, we are not disposed to disturb tne partition made by the commissioners:, only two questions, therefore, are presented; by the decree, for revision. 1st. Should the contract for exchange be specifically enforced? and, 2d, Should Kennedy’s interest, whatever it may be, original or derivative, be decreed out of the land allotted to-May’s heirs.
I. Before Kennedy or those claiming under hi ta-can be entitled to the full benefit of the contract with John May, for exchange of interests, it should be made clearly to appear that the exchange can be made justly and effectually. May was to exchange a portion oi his interest in the tract Of IS,000 acres, for so much land in another tract as should be obtained by Keuuedy, lor his interest of one sixth as locator. 'lilts conlracl was made ajter the emanation of the patents j or all the land.
It would seem, therefore, that May did not intend to take the chance oi Kennedy's interest, or to carry the contract into elieoi to an\ greater extent than * , , J ® , , . Kennedy s mieiest m the land winch tne patents should hold against the world. It would seem, also, foal 11 was appieheuueu that there were prior appropnauoiis of the 4,500 acres; for, on any other hypothesis, it would be üilíicult to imagine why, u , aq me Kgai mies had been perfected, May . ° f , , , stipulated to exchange lor so much laud only as should be obtained. The lact, therefore, that pa *311 tents have been obtained for a part of the 4,500 acres, cannot be admitted as sufficient evidence, in this controversy, to prove that the land or any part of the land so granted, was vacant, or has been “ohtained,” so as to be available to the appellants. On that point the appellees have procured no evidence; nor have they even ventured to allege that the appellants ever obtained, or ever can obtain, a foot of h , „a„ mi ii i i • the 4,500 acres. The appellants have averred, m their answer, that the whole of that land was covered by prior and valid claims; and although that averment has not. been sustained by any direct pt oof, nevertheless it seems to us that the appellees have not shown, satisfactorily, that there should be a specific execution of the contract for exchange: and as the grants are insufficient (for the reason which has been suggested) to impose the onus on the appellants, it was surely incumbent on the appellees, seeking a specific execution, to show that it could be decreed consistently with justice and reciprocity. If this could be done, it would have been easy for them to show it; and it was peculiarly proper that they should, at least, have attempted it, as Kennedy was the locator, and the appellants had been non-residents and infants during the greater part of the time from the death of their ancestor to the institution of their ejectments. Besides, as the appellants positively swear in their answer, that no part of the 4.500 acres had been saved, and as the appellees have made no allegation on that subject, but, by insisting that the contract of exchange was “a chancing bargain,” seem rather to admit the fact averred in the answer, it is quite probable that no part of the 4.500 acres has been “obtained” availably, or ever can be, to the appellants. We cannot admit that the contract can be fairly.construed as a “chancing” one. Wherefore, the equity of the appellees is, in this particular, too questionable to justify a specific execution.
II. But on the second point involved in the decree, we concur with the circuit court. As the orinal interests of all the partners are clearly shown, by proof and by admissions, to have been such as John May’s memorandum represented them to be, *312 and as there is no proof, or even intimation in the rec01’T that Kennedy’s interest was ever diminished John May’s ever enlarged, except so far as the act of 1792 may tend to authorize some such inference, so much of the decree as we are now considering, must he sustained by showing, that Kennedy’s interest of one sixth, was not purchased by Craig or Thomas until after the passage of the act; that it-was not included in their interest of three fourths, designated in the preamble, hut that it was included in the one fourth ascribed to May’s heirs, and was also included in the allotment made to them by the commissioners. A 1 this will, in our opinion, satisfactorily appear upon a careful examination of the facts; and if it shall, there can be no doubt that this part of the decree is right.
One having no nsjonci in act ofr'the<m ed by it’Vpn:visions, nor ¡’y *he Prptitle lastremain unimpaired unless, tbe'act^Sach act is evidenco only nsainit partios piwus, General seinbly making partition of land, and not mentioned in it cannot bo affnefbut not against him who bad no aponcy in its procurement.
As Kennedy’ had no agency in procuring the act for partition, and was not mentioned in it,neither he nor ^lose claiming under him can be affected by the preamble or by the act itself unless he had sold his interest to Craig prior to the date of the act.
The conveyance by Tabb, of his interest, to Thomas, bears dale in 1794, two years after the date of the act. But there is conclusive proof (in this record) that- he had sold his interest to Thomas, by executory contract, in March 1792, prior to the da>e of the act. It also appears that Thomas bought Heorge May’s interest, of one twelfth, in March, 1792. Admitting that Tabb’s interest was three sixth parts or one half, when he sold to Thomas, onty one s>xt^ was wanting to make Thomas’s intcrest three fourths, after he had acquired the iuterest of Tabb, and of George -May, in March, 1792. Either Kennedy’s or William May’s interest would Supp[y this deficit exactly, and makeup the three fourths represented in the preamble, as belonging to Craig and 1 hoinas, in consequence of contracts made by them with the original claimants; leaving to John May one twelfth, and to the party, who had not sold, one sixth, constituting the remaining one fourth.
Philemon Thomas, in his deposition filed in the case, but objected to as incompetent, swore that Craig bought from Walton, W. May’s sixth part, *313 prior to the passage of the act; thvs mabingthe three fourths described in the preamble, as belonging to Thomas and Craig; that Craig did not huy Kennedv’s interest until December 1792, after the partition had been made, and that Keiinedv’s interest was blended with John May’s in the preamble, and in the partition. This deposition, if admissible, must be decisive. It rnav be difficult to perceive why Thomas was not a competent witness; but as an extensive analysis of facts would be necessary for ascertaining whether he was competent or not, and as we deem the facts stated bv him sufficiently established withont'his deposition, we will not give it any effect, and shall thus waive a decision on its admissibility.
It is not pretended that John May ever acquired any right to the interest of Kennedy, or to that of W. May, or that either of the latter ever sold to any other person than Walton and Craig; consequently J. May’s interest, at the date of the act of assembly for partition, could not have exceeded a twelfth part, and either William May’s interest, or that of Kennedy, must have been blended with it in the preamble and in the partition, unless Thomas and Craig had acquired, prior to thp date of the act, the interests of both W. May and Kennedy. The preamble is evidence against Thomas and Craig only, and proves that t.heir interest did not exceed three fourths; but it is not evidence against Kennedy, or those now claiming under him, to prove that he had then parted with his interest; nor is it any proof in favor of the appellants (as between them and Kennedy) to shew that the interest of their father was never more than one twelfth. Indeed, J. May’s interest could not have been increased beyond a twelfth unless he had bought from Tabb, and there is no intimation any where in the record, that he enlarged his original interest by anv contract with Tabb.
There is no fact tending, in any degree, to prove that Craig had acquired Kennedy’s interest prior to December, 1792, the date of their written contract. As that co itraet was very important and embraced multifarious matter, it is not probable that it was, in fact, made vears, or even months, before it was re *314 duced to writing W. Craig and Orr (one of the commissioners who made the partition) ha\e sworn, Kennedy’s interest was included in the allotment made to May’s heirs, and that the interests of Tabb, W. May and George May were included in the residue allotted to Craig and Thomas; and this is intrinsically probable, because, as Kennedy had no interest except that to which his contract with John May for locating might have entitled him, he might have looked to J. May alone for the fulfilment of that contract, and therefore it was proper, especially in the absence of May’s heirs, to assign to them their father’s primary interest, among the original partners, of one fourth, and thus leave to Kennedy, and the representatives of J. May, the adjustment of their rights under their contract.
But there is another consideration which seems to be almost conclusive: Craig bought from Kennedy his interest in the 18,000 acres only. He and Thomas bought from Tabb, G. May and Walton (alias W. May) all their interests in the whole 41,843 acres. These interests amount to three fourths of the whole concern — as recognized by the act of assembly. But Kennedy’s interest in the 18,000 acres alone could not (if added instead of W. May’s) have made the compliment of three fourths of the 41,846 acres If it could have made the interest of Thomas and Craig three fourths of the 18.000 acres, that inteiest in the 41,846 acres would have been less than three fourths, and vice versa: and besides, Kennedy would then have been entitled to a sixth of all the other tracts, and would not, on any reasonable hypothesis, have been, in that event, pretermitted in the act of Assembly. Nor can we imagine how Craig and Thomas could, in that way, have been entitled to three fourths of the 41,846 acres, when Kennedy’s sixth in the 18,000 acres would have made their portion greater in that tract than in the residue of the whole quantity to be divided.
It is true, that Walton’s transfer of W. May’s interest, is dated in 1795; but that transfer is endorsed on J. May’s memorandum; and it is, the> efore, not only more probable that Walton had sold the interest before the endorsement was made, and before *315 the date of the act of Assembly, than it is that such a contract as that between Kennedy and Craig was made mouths before there was any written memorial ot it; but all the facts, when consolidated, contain an intrinsic probability that Craig acquired W. May’s interest prior to the date of the act, and did not acquire that of Kennedy until after the partition had been actually made However, as Craig had acquired the interests of both Kennedy and Win. May, it is not material which he acquired since, or which before, the date of the act of Assembly; one or both must have been bought since the date of the act, for there is not a particle of proof tending, in the remotest degree, to prove that both of these interests had been bought at that time — and there is conclusive proof, (intrinsic and extrinsic) that Kennedy’s interest was not sold until December, 1792. The preamble of the act may prove, that the interest of Thomas and Craig did not then exceed three fourths — but it cannot prove that their interest has not since been enlarged. It may be proof that, as between them and May’s heirs, the latter were entitled to one fourth, but it is no proof, .as between May’s heirs and Kennedy, that the latter, as the locator, was not entitled to any part of the fourth conceded to the former by Craig and Thomas in the preamble of* the act of Assembly. Indeed, the act itself provided, that it should not effect the interest of any person who was not mentioned in it; thereby intimating that some other person, than Thomas and Craig and May’s heirs, still had an interest. As then Kennedy was not affected by the act of Assembly, and there is no proof, as against him or those now claiming under him, that J. May’s interest exceeded one twelfth; and as it is plain that Kennedy sold his sixth oí' the 18,000 acres to Craig, after the passage of that act, nothing in the act or in the record can have the magic effect of divesting that interest, or of swelling the interest of May’s heirs to one fourth. Moreover, there is a writing in the record, whereby John May, one of the. appellants, acknowledged, in 1815, tiiat the interest of the appellants was only one twelfth, and it is not only not pretended but there is no pretext for pretending that their interest, in the whole 41,846 *316 acres, exceeds one twelfth: How it can have been enlarged to a fourth in the 18,000 acres alone, we would be unable even to conjecture.
Bmm, for appellants; Beatty, for appellees.
It, therefore, seems to us, that May’s heirs remained liable to Kennedy on. the contract between him and their ancestor, for one sixth of the 18,000 acres, as well as of the residue of tee 41,846 acres; and that, as Kennedy and those claiming under hiu f acquiesced in the partition, the appellees are entitled to a decree for two thirds of so much of the 3,000 acres allotted to May’s heirs, as lies in Bracken, and is embraced in this suit. As Kennedy was entitled by his contract with John May, to one sixth of tiie land which should be obtained, it is not necessary for the appellees to show, (as it might be necessary for them to do under other circumstances,) that the whole of the quantity called for by the warrants was located or vacant land, or liow much of that quantity was vacant.
As the circuit court decreed to the appellees a greater inteiest than we think them equitably entitled to, tiie decree is reversed aud the cause remanded, with instructions to. carry into effect the principles of this opinion, by si.cii outers and decrees as shall he necessary and proper for effectuating the just lights ot the parties, according to tile standard herein fixed, ana to tiie piiuwples of justice and equity.